UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-24051-CIV-DAMIAN/Sanchez

**KUM NEO KIM and KYUNG PARK,**

    Plaintiffs,

v.

**CARNIVAL CORPORATION,**

    Defendant.

_____/

<u>**OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDMENT**</u>

**THIS CAUSE** is before the Court upon Defendant, Carnival Corporation's ("Defendant" or "Carnival"), Motion for Summary Judgment [ECF No. 53 ("Defendant's Motion")], filed October 31, 2025, and Plaintiffs, Kum Neo Kim and Kyung Park's ("Plaintiffs"), Motion for Partial Summary Judgment on Liability (Corrected) [ECF No. 69 ("Plaintiffs' Motion")], filed November 13, 2025.

**THE COURT** has carefully reviewed Plaintiffs' Motion, and the Response and Reply thereto [ECF Nos. 82, 87], Defendant's Motion, and the Response and Reply thereto [ECF Nos. 75-1, 79][1], the applicable law, and the pertinent portions of the record and is otherwise fully advised. The Court also heard oral argument from the Parties on January 27, 2026. [ECF

---

[1]     Plaintiffs filed their Response in Opposition to Defendant's Motion for Summary Judgment without the case caption. *See* [ECF No. 70]. The Clerk of Court instructed the Plaintiffs to "File a Notice of Striking, then refile the document with the proper caption pursuant to Local Rules." [ECF No. 73]. Plaintiffs filed their Notice of Striking, [ECF No. 75], but failed to refile the Response as a separate docket entry. The Court therefore considers the Plaintiffs' Corrected Response, [ECF No. 75-1], which is attached to Plaintiffs' Notice of Striking, as the operative Response.

No. 95]. For the reasons that follow, Defendant's Motion is due to be granted, and Plaintiffs' Motion is due to be denied.

## I. BACKGROUND

In this maritime negligence action, Plaintiffs seek damages for injuries they sustained as commercial passengers while aboard Defendant's cruise ship, the *Carnival Liberty*. *See* Plaintiffs' Statement of Material Facts ("Plf. SOF") [ECF No. 55 ¶¶ 1-2]; Defendant's Statement of Material Facts ("Def. SOF") [ECF No. 52 ¶¶ 1, 3].

### A. *The Alleged Incident And Injury*

Plaintiffs allege they were injured on November 8, 2023, when a wooden bench in the women's sauna collapsed. Plf. SOF ¶¶ 1-2; Def. SOF ¶ 3. The day before the incident, Plaintiff Kim went to the women's sauna and sat on the wooden benches, noticing that the benches moved slightly. *See* Kum Kim's Deposition [ECF No. 52-2 at 52:17-25]; Def. SOF ¶ 5. Plaintiff Kim testified that she did not think much of the slight movement, therefore she did not report it to anyone. *See id*. When Plaintiffs entered the sauna on November 8, they did not observe anything out of the ordinary. *See* Kim Depo. at 59:10-12; Kyung Park's Deposition [ECF No. 52-1 at 15:1-13]; Def. SOF ¶ 10.

Plaintiff Park entered the sauna, climbed onto the second-tier bench and sat down. *See* Park Depo. at 13:20-14:10; Def. SOF ¶ 14. A few seconds after she sat on the bench, the bench started shaking and moving, and then it collapsed. *See* Park Depo. at 26:14-27:6; Def. SOF ¶ 19. Plaintiff Park testified that after she sat down on the bench, the part under her feet gave out, which caused the back part of the chair to separate from the wall and Plaintiff Park to fall forward. *See id*. Plaintiff Park landed on her hands, injuring her neck, wrist, knees, and spine. *See* Interrogatory Answers of Kyung Park [ECF No. 52-4 at No. 6]; Def. SOF ¶¶ 20-22.

2

Plaintiff Kim testified that she did not even get the chance to sit down; the bench fell and hit her in the leg while she was still standing. *See* Kim Depo. at 60:3-20; Def. SOF ¶¶ 24-25. Plaintiff Kim alleges that the bench hit and injured her right leg, causing continuous pain and a permanent scar. *See* Interrogatory Answers of Kum Kim [ECF No. 52-5 at No. 6]; Def. SOF ¶ 26.

### B. Procedural History

On October 21, 2024, Plaintiffs filed their Complaints against Carnival in two separate actions. *See* [ECF No. 1]. *See also Kyung Soon Park v. Carnival Corporation* (Case No. 24-cv-24059) [ECF No. 1] ("Transferred Action"). After filing its answers and affirmative defenses, *see* [ECF No. 8]; *see also* Transferred Action [ECF No. 9], Carnival filed a Motion to Transfer and Consolidate with the "Similar Action", *see* Transferred Action [ECF No. 10]. This Court granted the Motion to Transfer and Consolidate, which administratively closed the Transferred Action and consolidated the cases. *See* [ECF No. 14]; Transferred Action [ECF No. 12].

In Count I of the Complaint, Plaintiffs allege that Carnival was negligent because it "fail[ed] to ensure the wooden benches in the sauna were safe to sit upon" and that this breach caused Plaintiff Park's fall and caused both Plaintiffs' injuries. Compl. at ¶¶ 10-11. According to Plaintiffs, Carnival "had constructive knowledge of this hazard" which deteriorated "over a period of months, [] is due to wear and tear….and is easily spotted during routine maintenance", so Carnival "had plenty of time to discover and fix it." *Id*. ¶ 13. Plaintiffs further allege that the doctrine of *res ipsa loquitur* applies and raises an inference of negligence on Carnival's part because "(1) the injured party was without fault, (2) the instrumentality causing the injury was under the exclusive control of Carnival, and (3) the mishap is of a type

3

that ordinarily does not occur in the absence of negligence." *Id.* ¶ 14. As a result of the allegedly dangerous condition created by Carnival, Plaintiffs aver that they fell and suffered physical and mental injuries. *Id* ¶ 12.

In the Motions now before the Court, Carnival seeks summary judgment as to Plaintiffs' sole count of negligence, *see* Def. Mot., and Plaintiffs seek partial summary judgment as to Carnival's liability, *see* Pl. Mot. The Motions are fully briefed and ripe for review, and this case is set for a jury trial during the Court's two-week trial calendar beginning on February 9, 2026. *See* [ECF No. 21].

## II.    LEGAL STANDARD

### A. *Summary Judgment*

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In reviewing a motion for summary judgment, the Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)). Importantly, "at the summary judgment stage the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter," but only "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

Additionally, "cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Ga. State Conf. of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345-46 (11th Cir. 2015) (cleaned up). When the parties file cross-motions for summary judgment, the standard of review "does not differ from the standard applied when one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *GEBAM, Inc. v. Inv. Realty Series I, LLC*, 15 F. Supp. 3d 1311, 1315–16 (N.D. Ga. 2013) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)); *see also United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions…will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." (alteration added; citation omitted)).

### B. General Maritime Law

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters," and courts "rely on general principles of negligence law" in

5

analyzing those actions." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)). The elements of a negligence claim based on a shipowner's direct liability for its own negligence are well settled: "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014) (quoting *Chaparro*, 693 F.3d at 1336).

"With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara*, 920 F.3d at 720 (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). "This standard 'requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of [a] risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure.'" *Id.* (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) (explaining that a shipowner "is not liable to passengers as an insurer, but only for its negligence"). Thus, a shipowner's actual or constructive knowledge of the hazardous condition arises as part of the duty element in a claim seeking to hold the shipowner directly liable for its own negligence. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Therefore, a cruise ship operator's liability often "hinges on whether it

knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 797 (11th Cir. 2019). "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller v. NCL (Bahamas) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) (Ungaro, J.).

### III.   DISCUSSION

Carnival argues it is entitled to summary judgment on Plaintiffs' claim of negligence for three reasons: (1) there is no record evidence that Carnival knew or should have known that the wooden sauna bench was unsafe; (2) there is no evidence that Carnival breached its duty of care or proximately caused Plaintiffs' injuries; and (3) Plaintiffs cannot meet their burden of proving the elements of *res ipsa loquitur*.

Plaintiffs argue they are entitled to partial summary judgment on the issue of liability for three reasons: (1) Carnival had actual and constructive notice of the sauna bench creating a dangerous condition; (2) Carnival's negligent maintenance protocols are an independent basis for liability; and (3) no evidence of comparative fault exists.

This Court begins its analysis by considering whether Plaintiffs have met their burden of presenting evidence sufficient to create a genuine issue of material fact as to whether Carnival had actual or constructive notice of the alleged dangerous condition.

#### A.   *Whether Carnival Had Actual Or Constructive Notice of the Dangerous Condition.*

Actual notice exists when the defendant knows about the dangerous condition. *See Keefe*, 867 F.2d at 1322; *Guevara*, 920 F.3d at 720. Constructive notice exists when "the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures." *Id*. A plaintiff can establish

constructive notice by alleging "substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Holland*, 50 F.4th at 1095 (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988)).

Carnival argues that it had no actual or constructive notice of the alleged hazard—*i.e.*, that the bench in the women's sauna was unsafe to sit on—as there is no evidence in the record that the bench was a recurring problem, of substantially similar incidents causing prior accidents, or that the condition existed or was detectable for a sufficient length of time. Def. Mot. at 11-15.

Plaintiffs argue that Carnival had actual and constructive notice that the sauna bench presented a dangerous condition because six months before Plaintiffs' incident, a bench in the same sauna had to be repaired due to wood damage. *See* Pl. Mot. at 4-5. Specifically, Plaintiffs rely on a work order, numbered HL522785, from May 15, 2023 ("May 15 Work Order"), and testimony from Rolando Diaz, Carnival's Corporate Representative, to show that a bench in the women's sauna required repair due to "wood damage," and was repaired, six months before Plaintiffs' incident. *See* [ECF No. 55-2]; *see also* Rolando Diaz's Deposition [ECF No. 55-4 at 26:9-23].

Upon review of the May 15 Work Order and Diaz's testimony in the light most favorable to Plaintiffs, this Court finds that they do not create a genuine issue of material fact as to whether Carnival had actual or constructive notice of a dangerous condition in the sauna bench. Review of the May 15 Work Order relied on by Plaintiffs does not indicate that Carnival repaired the same bench that injured Plaintiffs, nor is there any evidence in the record that indicates that the "wood damage" at issue in the May 15 Work Order was the

8

same or even similar issue as that which led the bench to collapse under Plaintiff Park. Plaintiffs speculate that the issues must have been similar but offer no evidence—in their pleadings or at the January 27 hearing—to back up that speculation. Plaintiffs' speculation is insufficient to create a genuine issue of material fact as to whether Carnival had actual or constructive notice. *See Horne v. Carnival Corp.*, 741 F. App'x 607, 610 (11th Cir. 2018) ("[T]he work orders alone do not create a genuine issue of fact about whether Carnival had actual or constructive notice that the door was in a dangerous condition at the time of the incident."); *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1296 (S.D. Fla. 2021) ("Evidence that the balcony door was repaired on two occasions is insufficient to place a defendant on actual or constructive notice as to a dangerous condition."). The record in this case is devoid of any evidence establishing either that the allegedly dangerous condition that led to the fall here existed for any length of time, or that the condition occurred with any kind of regularity. In fact, other than their speculation that a similar condition previously existed based on the May 15 Work Order, Plaintiffs do not allege that any substantially similar incidents with conditions substantially similar to the occurrence in question happened prior to Plaintiffs' incident.

      Plaintiffs' argument that Carnival had actual and constructive notice therefore rests on the theory that "the condition of the wood did not arise suddenly but developed gradually over time…if the deterioration that caused the collapse was progressive—such as rot, loosening of supports, or warping of the wood—then the hazard was one that should have been discovered and corrected through [Carnival's] constant, routine inspections." Pl. Mot. at 5. For Plaintiffs to survive summary judgment on this theory, they would need to offer evidence to create a genuine dispute as to whether the sauna bench existed in a defective condition, as Plaintiffs allege, "for a sufficient period, and under circumstances where

9

[Carnival] should have identified and remedied it." *Id*. But as the Eleventh Circuit explained, "[a] defect, however, must be reasonably detectable for it to invite corrective measures". *Tesoriero*, 965 F.3d at 1179 (internal quotations omitted). As in *Tesoriero*, there is no evidence that the bench's condition here issued any such invitation.

Plaintiffs point to Carnival's "'regular inspections" of the sauna benches as evidence of constructive notice. However, this Court agrees with Carnival that these regular inspections weigh against a finding of constructive notice that the bench was dangerous—not in favor of that finding. *See id*. (citing *Guevara*, 920 F.3d at 720). Diaz's testimony established that Carnival's daily housekeeping regimen required employees to clean and inspect the sauna twice per day and to disassemble and reassemble the benches in the sauna once a week for thorough cleaning. *See* Diaz Depo. at 22:2-14. Diaz testified that Carnival's employees regularly walk throughout the area to visually inspect and ensure that everything in the sauna is functioning properly. *See id*. Diaz further testified that the May 15 Work Order was opened and closed within the same day, indicating the necessary repairs were made. *See id*. at 26:14-23, 35:10-12.

The absence of a report noting structural damage to the women's sauna bench that collapsed under Plaintiffs—or any sauna bench on the ship for that matter—indicates that the bench was not in a condition that invited corrective measures. Upon questioning by this Court, Plaintiffs could not point to any evidence that would support such an inference either. And, at a more basic level, Plaintiffs' constructive notice argument is undermined by their own evidence. In Plaintiff Kim's deposition, she testified that the day before the incident, she sat on the wooden benches in the women's sauna and observed that they moved slightly, but she "didn't think much of it." *See* Kim Depo. at 52:17-25; Def. SOF ¶ 5. And both Plaintiffs

10

admitted that, before it collapsed, the sauna bench did not appear out of the ordinary. *See* Kim Depo. at 59:10-12; Park Depo. at 15:1-13; Def. SOF ¶ 10.

The combined effect of this evidence does not support a reasonable inference that Carnival should have known about the purported dangerous condition. Quite the opposite: it supports an inference that the defect in the bench was hidden, was not readily observable by sight or touch, and was not discoverable by disassembling the benches. Rather than establishing that Carnival should have known of the bench's defective condition, the evidence supports the cruise line's assertion that given that the dissembling and reassembling of the sauna benches during cleaning and the conducting of routine visual inspections did not reveal a risk-creating condition, it cannot be reasonably inferred that they should have known of a dangerous condition with the women's sauna benches.

Plaintiffs' inability to come forward with any evidence regarding this necessary element of their negligence claim requires the entry of summary judgment in Carnival's favor. *See Tesoriero*, 965 F.3d at 1183.

### B. Whether Res Ipsa Loquitur Applies.

Plaintiffs argue that a jury may find Carnival negligent based on the doctrine of *res ipsa loquitur*. *See* Pl. Resp. at 4-5. *Res ipsa loquitur* is Latin for "the thing speaks for itself," and "is an evidentiary doctrine that permits a trier of fact to infer a defendant's negligence from unexplained circumstances." *Tesoriero*, 965 F.3d at 1180. For *res ipsa loquitur* to apply, a plaintiff must show that "(1) the injured party was without fault, (2) the instrumentality causing the injury was under the exclusive control of the defendant, and (3) the mishap is of a type that ordinarily does not occur in the absence of negligence." *Id.* (quoting *United States v. Baycon Indus., Inc.*, 804 F.2d 630, 633 (11th Cir. 1986)).

However, *res ipsa loquitur* "does not eliminate a plaintiff's obligation to prove that the defendant owed a duty to the plaintiff in the first place." *Id.* at 1182 (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 901 (4th Cir. 2003)). "[A] a plaintiff who relies on *res ipsa loquitur* to show a breach of duty still bears the burden of proving that a duty existed in the first place… [a]nd because notice is an integral part of duty, a passenger who relies on *res ipsa loquitur* bears the burden of showing that the cruise line had notice." *Id.* at 1183. Plaintiffs do not contest that *res ipsa loquitur* "does not eliminate the prerequisite of notice". Pl. Resp. at 5.

As it applies to this case, then, the doctrine of *res ipsa loquitur* does not help Plaintiffs. Carnival's duty was to protect Plaintiffs from dangerous conditions that it was aware of or should have been aware of. But, as the Court has already explained, Plaintiffs' own evidence shows that the bench's defect was hidden. Plaintiffs' failure to come forward with evidence creating a reasonable inference that Carnival had actual or constructive notice is therefore fatal to their case, regardless of whether the doctrine of *res ipsa loquitur* applies. *See Tesoriero*, 965 F.3d at 1183. *See also Cunningham v. Carnival Cruise Line*, No. 24-CV-23143, 2025 WL 2418391 at *4-5 (S.D. Fla. Aug. 21, 2025); *Chamberlain v. Royal Caribbean Cruises Ltd.*, No. 23-24039-CIV, 2025 WL 1433727 at *4 (S.D. Fla. Jan. 17, 2025).

Moreover, Plaintiffs also fail to come forward with evidence demonstrating that their injuries ordinarily would not have occurred without negligence. *See Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 513 (11th Cir. 2019); *Baez v. MSC Cruises, S.A.*, No. 1:20-CV-22732-LFL, 2022 WL 22883192 at *10 (S.D. Fla. June 20, 2022). The record here supports at least two other equally probably causes of Plaintiffs' injuries besides Carnival's alleged negligence. First, Plaintiff Park may have jarred the bench loose when she climbed onto and positioned herself on the bench. *See* Diaz Depo. at 73:2-17. Plaintiff Park's own testimony

12

supports this theory, as she testified that "when the bottom bench collapsed, the second-tier bench moved forward and fell forward…I don't think the wood broke, maybe moved." *See* Park Depo. 28:21-29:4. Second, the bench may have collapsed due to a design defect, given that the benches were inspected regularly before the incident with no issues observed, the benches only needed to be repaired—and were repaired—once before, and there were no prior incidents with the benches.[2] "Given these equally probably inferences about the cause of injury" *res ipsa loquitur* does not apply. *Sutton*, 774 F. App'x at 513.

### C. Whether Carnival's Negligent Maintenance Protocols Created A Dangerous Condition.

Plaintiffs also argue that Carnival's "negligent maintenance protocols are an independent basis for liability" because Carnival's "own daily maintenance protocols created the dangerous condition" by way of defective warning and instruction. *See* Pl. Mot. at 6-7. However, this claim is absent from the Plaintiffs' Complaint. *See generally* Compl. The Complaint asserts one negligence claim based on Carnival's constructive notice of the hazardous condition and *res ipsa loquitur*. Compl. ¶¶ 13-14. Plaintiffs did not seek to amend to add a claim based on negligent maintenance, and discovery proceeded on the basis of the claims in the Complaint. It was not until summary judgment that Plaintiffs raised this alternate theory for the first time. Plaintiffs are not permitted to assert new claims at the summary judgment stage. *See Cacciamani v. Target Corp.*, 622 F. App'x 800, 804 (11th Cir. 2015) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with [Federal Rule of Civil Procedure] 15(a)) (citation omitted). It is the complaint that must give the defendant notice of what the plaintiff

---

[2]  Plaintiffs have not asserted a claim based on design or manufacturing defect.

complains. *Id*. (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

In any event, review of Plaintiffs' argument regarding their alternate theory of "negligent maintenance protocols" reveals the claim is actually a negligent mode of operation claim in disguise. "The basis for the negligent mode of operation theory is the claim that the specific mode of operation selected by the premises owner or operator resulted in the creation of a dangerous or unsafe condition." *Id*. (quoting *Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 260 (Fla. 2002)). This theory of liability "looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident." *Id.* (quotation marks omitted). Here, Plaintiffs allege that Carnival's policy does not require filling out the "Root Cause" field on the maintenance work orders. *See* Pl. Mot. at 6. Plaintiffs argue that Carnival "chose not to find out" the root cause of the sauna bench issues either for the May 15 Work Order or the collapse that injured Plaintiffs, which, according to Plaintiffs, "is negligence as a matter of law." *Id*.

The Eleventh Circuit has specifically held that causes of action sounding in negligent mode of operation do not exist under federal admiralty law. *See Malley v. Royal Caribbean Cruises, Ltd.*, 713 Fed. App'x 905, 910 (11th Cir. 2017); *see also Youngman v. Royal Caribbean Cruises, Ltd.*, 2023 WL 5206036 (S.D. Fla. Aug. 14, 2023) (court dismissed the plaintiff's claim with prejudice that sought to hold cruise line liable with respect to its policies and procedures because a negligent mode of operation claim is foreclosed by Eleventh Circuit precedent); *Torrents v. Carnival Corp.*, 2022 WL 3154511, at *3 (S.D. Fla. Aug. 8, 2022) ("Claims for negligent mode of operation are not recognized in federal admiralty law."); *Quashen v. Carnival Corp.*, 2021 WL 5978472, at *23 (S.D. Fla. Dec. 17, 2021) ("[I]t is well settled that general

14

maritime law does not recognize a claim of negligence that is premised upon a company's general policies and operations"); *Stewart-Patterson v. Celebrity Cruises, Inc.*, 2012 WL 2979032, at *2 (S.D. Fla. July 20, 2012) (holding that a claim for negligent mode of operation that specific mode of operation selected by the premises owner resulted in the creation of a dangerous or unsafe condition is not cognizable under federal admiralty law); *Nowak v. Carnival Corp.*, 2025 WL 57525, at *3-4 (S.D. Fla. Jan. 9, 2025) ("[A]llegations describing a failure to create or follow adequate policies and procedures do not relate to the specific circumstances of a plaintiff's injury and are instead allegations of negligent mode of operation not recognized in the Eleventh Circuit.").

The same goes for the at-issue allegations here, which seek to hold Carnival liable for negligent modes of operation based on its policy of making the "Root Cause" filed optional on maintenance work orders. This is not a cognizable claim in the Eleventh Circuit, and this Court will not consider it, especially when improperly asserted for the first time at summary judgment. *See Cacciamani*, 622 F. App'x at 804-05.

D. *Carnival's Remaining Arguments.*[3]

In its Motion and Response to Plaintiffs' Motion, Carnival asserted additional arguments—that it met its duty of reasonable care and that Plaintiffs failed to show proximate causation. Because Plaintiffs have not come forward with evidence demonstrating that

---

[3] Plaintiffs also argue that Carnival has offered no evidence that Plaintiffs were comparatively negligent and that there is no evidence of misuse by the Plaintiffs such that there is no triable issue of comparative fault. *See* Pl. Mot. at 7-8. Again, this Court need not reach this argument because Plaintiffs cannot survive summary judgment on their negligence claim. But the Court points out that this argument is unpersuasive because, as explained above, the record supports at least two other equally probable causes of Plaintiffs' injuries besides Carnival's negligence, including the theory that Plaintiff dislodged the bench when she climbed up to sit on it.

15

Carnival had notice, and notice is a prerequisite to imposing liability, this Court need not address these alternative arguments. *See Guevara*, 920 F.3d at 720; *Tesoriero*, 965 F.3d at 1178. Still, as explained above, Plaintiffs have not come forward with evidence indicating that Carnival failed to act with ordinary reasonable care under the circumstances. The record evidence shows that Carnival routinely cleaned, inspected, disassembled, and reassembled the benches in the sauna and that any necessary repairs were reported and remedied as quickly as possible. *See* Diaz Depo. at 22:2-14, 26:14-23, 35:10-12. Plaintiffs' argument rests on the theory that "the condition of the wood did not arise suddenly but developed gradually over time…if the deterioration that caused the collapse was progressive—such as rot, loosening of supports, or warping of the wood—then the hazard was one that should have been discovered and corrected through Carnival's constant, routine inspections." Pl. Mot. at 5. But Plaintiffs offer no evidence that indicates that the condition of the wood caused the collapse, and "[a] mere possibility of such causation is not enough." *In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1171, 1184 (S.D. Fla. 2013) (citations omitted).

## IV.     CONCLUSION

Based on a careful review of the parties' submissions, viewing all the record evidence in the light most favorable to Plaintiffs, this Court finds, as discussed above, that Plaintiffs have failed to come forward with evidence sufficient to create a genuine issue of material fact as to whether Carnival had or should have had notice of a dangerous condition with the benches in the women's sauna that led to Plaintiffs' injuries. Instead, Plaintiffs rely on speculation and guesswork in arguing that Carnival should have known about the condition. Therefore, Carnival is entitled to summary judgment on Plaintiffs' negligence claim. As discussed above, Plaintiffs' arguments in support of their Motion also fail.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment **[ECF No. 53]** is **GRANTED**.

2. Plaintiffs' Motion for Summary Judgment **[ECF No. 69]** is **DENIED**.

3. To the extent not otherwise disposed of, any pending motions, including ECF Nos. 56, 83, 86, and 88, are **DENIED AS MOOT**.

4. All deadlines and hearings are **TERMINATED**.

5. The Clerk is **DIRECTED** to **CLOSE** this case.

6. Final Judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at the Southern District of Florida, this 28th day of January 2026.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record